Benjamin M. Lopatin, Esq. (SBN 281730)
*blopatin@ELPlawyers.com*
EGGNATZ, LOPATIN & PASCUCCI, LLP
2201 Market St., Suite H
San Francisco, CA 94114
Tel.: (415) 324-8620
Fax: (415) 520-2262

*Attorneys for Plaintiffs Gail Clardy,*
*Jennifer Rose and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GAIL CLARDY and JENNIFER ROSE**, individually, and on behalf of all others similarly situated, <br><br><br><br> Plaintiff, <br><br> v. <br><br><br><br> **PINNACLE FOODS GROUP, LLC.**, a New Jersey limited liability company, <br><br> Defendant. | CASE NO.: 16-4385 <br><br> <u>**COMPLAINT**</u> <br><br> **CLASS ACTION** <br><br> 1. Violations of Civil Code §§ 1750, *et seq.* (Consumer Legal Remedies Act); <br><br> 2. Violations of Bus. & Prof. Code §§ 17500, *et seq.* (False Advertising Law); <br><br> 3. Violations of Bus. & Prof. Code §§ 17200, *et seq.* (Unfair Prong of Unfair Competition Law); <br><br> 4. Violations of Bus. & Prof. Code §§ 17200, *et seq.* (Fraudulent Prong of Unfair Competition Law); <br><br> 5. Violations of Bus. & Prof. Code §§ 17200, *et seq.* (Unlawful Prong of Unfair Competition Law); and <br><br> 6. Violations of Fla. Stat. §§ 501.201, *et seq.* (Florida's Deceptive and Unlawful Trade Practices Act. <br><br> *JURY TRIAL DEMANDED* |

1

Plaintiffs, GAIL CARDY and JENNIFER ROSE (collectively "Plaintiff" or "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their undersigned counsel, and pursuant to all applicable *Federal Rules of Civil Procedure*, hereby files this Class Action Complaint, and alleges against Defendant, PINNACLE FOODS GROUP, LLC ("Pinnacle" or "Defendant"), as follows:

## I. <u>INTRODUCTION</u>

1.　　At all material times hereto, Defendant has unlawfully, negligently, unfairly, misleadingly, and deceptively represented that its: (1) Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix; (2) Duncan Hines Simple Mornings Triple Chocolate Chunk Premium Muffin Mix; (3) Duncan Hines Simple Mornings Apple Cinnamon Premium Muffin Mix; (4) Duncan Hines Simple Mornings Wild Maine Blueberry Premium Muffin Mix; and (5) Duncan Hines Simple Mornings Cinnamon Streusel Premium Muffin Mix (collectively the "Product" or the "Products"), contains "Real Ingredients" and "Nothing Artificial," despite containing unnatural ingredients that are synthetic, artificial, and/or genetically modified, including: monocalcium phosphate, xanthan gum, soy lecithin, palm oil, and/or corn starch.

An example of the Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix variety is depicted below for demonstrative purposes:



2.   Because the Products contain unnatural ingredients, such as monocalcium phosphate, xantham gum, soy lecithin, palm oil, and corn starch, the "Real Ingredients" and "Nothing Artificial" label is false, deceptive and likely to mislead reasonable consumers.

3.   Defendant manufactures, markets, advertises, and sells the Products as containing "Real Ingredients" and "Nothing Artificial" on the front packaging of the Products.

4.   At all material times hereto, the Products made the exact same "Real Ingredients" and "Nothing Artificial" claim on the exact same prominently displayed location on the front packaging for each and every one of the substantially similar Products.

5.      The representation that the Products are made with "Real Ingredients" and contain "Nothing Artificial" is central to the marketing of the Products.  This misrepresentation was uniformly communicated to Plaintiffs and every other member of the class.

6.      The "Real Ingredients" and "Nothing Artificial" claim is false, misleading, and likely to deceive reasonable consumers in the same respect, like Plaintiffs and members of the putative Class.

7.      The Products are misbranded and sold pursuant to unlawful, unfair, deceptive, misleading, and fraudulent business practices. At a minimum, Defendant's "Real Ingredients" and "Nothing Artificial" statement is likely to mislead reasonable consumers.

8.      Plaintiffs bring this class action to secure, among other things, equitable relief, declaratory relief, restitution, and in the alternative, damages, for a Class of similarly situated purchasers, against Defendant, for California's UCL, FAL, CLRA, and Florida's FDUTPA.

9.      Plaintiffs are seeking damages individually and on behalf of the putative Class. In addition, Plaintiffs are seeking an Order declaring Defendant's business practice to be in violation of California and Florida consumer protection statutes, and requiring Defendant to cease using unnatural, synthetic, and/or artificial ingredients in its "Real Ingredients" and "Nothing Artificial" Products, and/or Ordering Defendant to cease from representing that its Products contain "Real Ingredients" and "Nothing Artificial" on the packaging for the Product that contains unnatural, synthetic, and/or artificial ingredients.

10.     Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

11.     All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

## II. JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Plaintiff class is

a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs are citizens of California and Florida, and Defendant can be considered a citizen of New Jersey for diversity purposes. Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiffs allege that based on the sales of the Products, the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship exists under CAFA because, Plaintiffs are citizens of California and Florida, and Defendant can be considered a citizen of New Jersey for diversity purposes.

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this judicial District, and Plaintiff, Gail Cardy, purchased the subject Products of this action in this judicial District.

14.     The Declaration of Benjamin M. Lopatin, Esq., pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.*, regarding venue, is being filed concurrently with the filing of the Complaint, and is fully incorporated herein.

### III. <u>PARTIES</u>

15.     Plaintiff, Gail Clardy, is an individual more than 18 years old, is a citizen of California, and resides in Alamada County, California. Plaintiff respectfully requests a jury trial on all damage claims.

16.     Plaintiff, Jennifer Rose, is an individual more than 18 years old, is a citizen of Florida, and resides in the Palm Beach County, Florida. Plaintiff respectfully requests a jury trial on all damage claims.

17.     PINNACLE promoted and marketed the Products at issue in this jurisdiction and in this judicial District. PINNACLE is a limited liability company with its principal place of business located at 399 Jefferson Rd., Parsippany, NJ 07054, and is incorporated in Delaware. PINNACLE lists a Registered Agent with the California Secretary of State as CT Corporation System, which is located at 818 W. Seventh Street, Suite 930, Los Angeles, CA 90017. PINNACLE can be considered a citizen of New Jersey for diversity purposes. Based on information and belief and publicly available information, all of the individual officers of

PINNACLE are also citizens of states other than California.

18.     The advertising for the Products relied upon by Plaintiffs were prepared and/or approved by PINNACLE and its agents, and were disseminated by PINNACLE and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. PINNACLE is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising and statements for the Products.

19.     Plaintiffs allege that, at all times relevant herein, PINNACLE and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of PINNACLE and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiffs further allege on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were PINNACLE agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

20.     In addition, Plaintiffs allege that, in committing the wrongful acts alleged herein, PINNACLE in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that PINNACLE participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated. Whenever reference in this Complaint is made to any act by PINNACLE or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of PINNACLE committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of PINNACLE while actively engaged in the scope of their duties.

## IV. FACTUAL ALLEGATIONS

### A. PINNACLE'S Advertising of the Products

21.     PINNACLE manufactures, distributes, markets, advertises, and sells the Products that claim to contain "Real Ingredients" and "Nothing Artificial" when in fact, that claim is false, deceptive, and likely to mislead a reasonable consumer, because the Products contain unnatural, ingredients that are synthetic, artificial, and/or genetically modified.

22.     Defendant's "Real Ingredients" and "Nothing Artificial" claims, prominently displayed on the front of each individual packaging of the Products, in the same, substantially similar manner, and substantially similarly contain unnatural ingredients that are synthetic, artificial, and/or genetically modified.

23.     Defendant unlawfully markets, advertises, sells and distributes the Products throughout the United States to purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores as containing "Real Ingredients" and "Nothing Artificial."

24.     All of the Products' labeling and/or packaging uniformly and consistently state that the Products contains "Real Ingredients" and "Nothing Artificial."

25.     As a result, all consumers within the Class, including Plaintiffs, who purchased the Product, were exposed to the same "Real Ingredients" and "Nothing Artificial" claim in the same location on the front of the packaging for the Product.

26.     Plaintiffs and members of the Class would not have purchased the Products had they known that the Products' "Real Ingredients" and "Nothing Artificial" claims were untrue.

27.     In addition, Plaintiffs and members of the Class, were charged a price premium for the Products over and above other comparable products that do not claim to contain "Real Ingredients" and "Nothing Artificial."

### B. The Products Contains Artificial, Synthetic, and/or Genetically Modified Ingredients

28.     Contrary to PINNACLE's representations that the Products contain "Real Ingredients" and "Nothing Artificial," the Products do in fact contain artificial, synthetic and/or genetically modified ingredients, which reasonable consumers do not equate with "Real" or

"Nothing Artificial," such as monocalcium phosphate, xantham gum, soy lecithin, palm oil, and corn starch.

29.     ***Xanthan Gum*** is a synthetic additive derived from the bacterium *Xanthomonas campestris* through a pure-culture fermentation process. 21 C.F.R. s. 172.695(a); 7 C.F.R. s. 205.605. The additive is separated from the bacterial growth medium by the addition of isopropyl alcohol, or rubbing alcohol, after which it is dried and ground into a fine soluble powder. *Id.* A liquid medium is subsequently introduced to form a sticky gum substance that is used as a stabilizer, emulsifier, thickener, and suspending agent in food. As a result, xanthan gum is not "all natural" based on a reasonable consumer's understanding of the term.

30.     ***Monocalcium Phosphate*** is an inorganic compound used as fertilizer and as a leavening agent. Monocalcium phosphate is produced by treating calcium hydroxide with phosphoric acid. 7 C.F.R. 205.605(b) identifies monocalcium phosphate as a synthetic substance.

31.     No reasonable consumer, including Plaintiffs, would know or should know that monocalcium phosphate and xantham gum are artificial, synthetic ingredients.

32.     Based on information and belief, the **soy lecithin, palm oil,** and **corn starch** in the Product are derived from genetically modified organisms ("GMOs").

33.     Monsanto defines GMOs as "Plants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." *See* Monsanto, Glossary, available at *http://www.monsanto.com/newsviews/Pages/glossary.aspx#g* (last visited July 18, 2016).

34.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, discusses and defines GMOs as follows: "Agriculturally important plants are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from genetically modified plants will also contain these modifications." Romer Labs - Making the World's Food Safer - GMO, available at *http://www.romerlabs.com/en/knowledge/gmo/* (last visited July 18, 2016).

35.     The United States Environmental Protection Agency has distinguished conventional breeding of plants from genetic engineering using modern scientific techniques.

**What is the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding?**

> **Conventional breedin**g is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination. For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, e.g., sweeter fruit. Then, out of the offspring, the breeder would choose the offspring plant that produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.

> **Genetically engineered** plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticide[] (e.g., the insecticidal protein Bt from the bacterium, Bacillus thuringiensis) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.

Office of Prevention, Pesticides, and Toxic Substances, United States Environmental Protection Agency, Questions & Answers Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules 3 (2001), available at *http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf* (last visited July 18, 2016).

36.     According to the World Health Organization, of which the United States is Member State, "GMOs can be defined as organisms in which the genetic material (DNA) has been *altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or

'gene technology,' sometimes also 'recombinant DNA technology' or 'genetic engineering.' It allows selected individual genes to be transferred from one organism into another, also between non-related species."[1]

37. Despite all these unnatural ingredients, Defendant knowingly markets the Products as containing "Real Ingredients" and "Nothing Artificial." In the context of food labeling, labeling a Product as containing "Real Ingredients" and "Nothing Artificial," despite containing unnatural ingredients, is likely to mislead reasonable consumers. Reasonable consumers consider artificial, synthetic, and/or genetically modified ingredients to be unnatural and not "real" ingredients.

38. The "FDA has not developed a definition for use of the term natural or its derivatives," but it has *loosely* defined the term "natural" as a product that "does not contain added color, artificial flavors, or synthetic substances."[2] According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

7 C.F.R. §205.2.

39. The FDA has not occupied the field of "real" or "nothing artificial" labeling, and in any event, this case is about Defendant's voluntary and affirmative "Real Ingredients" and "Nothing Artificial" statement on the front packaging for the Product being false, misleading, and

---

1. WORLD HEALTH ORGANIZATION, 20 Questions on Genetically Modified (GM) Foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/index.html (last visited July 5, 2016).

2. *What is the Meaning of 'Natural' on the Label of Food?*, FDA, Transparency, FDA Basics, available at *http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868* (last visited July 5, 2016).

likely to deceive reasonable consumers. Courts routinely decide whether such statements are likely to deceive reasonable consumers.

40. Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defines a "natural" product as a product that does not contain any artificial or synthetic ingredient and does not contain any ingredient that is more than "minimally processed," defined as:

> (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices.

> Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing.[3]

41. Food manufacturers must comply with federal and state laws and regulations governing labeling food products. Among these are the Federal Food, Drug and Cosmetic Act (FDCA) and its labeling regulations, including those set forth in 21 C.F.R. part 101.

42. California, Florida and federal law have placed similar requirements on food companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

43. Plaintiffs are explicitly alleging only violations of state laws that are identical and/or mirror the labeling, packaging, and advertising requirements mandated by federal regulations and laws, including but not limited to, the Federal Food, Drug, and Cosmetic Act

---

[3]. *Food Standards and Labeling Policy Book*, USDA, 2005, available at *http://www.fsis.usda.gov/oppde/larc/policies/labeling_policy_book_082005.pdf* (last visited July 5, 2016).

(FD&C Act), the Federal Food and Drug Association (F.D.A.), the Federal Trade Commission (F.T.C.), and the Nutrition Labeling and Education Act (N.L.E.A.).

44. Plaintiffs' claims do not seek to contest or enforce anything in this Complaint beyond the requirements of federal law or regulations.

45. Like Plaintiffs' state law claims, under FDCA section 403(a) a food is "misbranded" if "its labeling is false or misleading in any particular," or if it fails to contain certain information on its label or its labeling. 21 U.S.C. § 343(a).

46. Therefore, Plaintiffs' state consumer protection law claims are not preempted by federal law or regulations. Additionally, the primary jurisdiction doctrine does not apply because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'

47. Although Defendant markets the Products as containing "Real Ingredients" and "Nothing Artificial," it fails to also disclose material information about the Products; the fact that it contains unnatural ingredients that are, synthetic, artificial, and/or genetically modified. This non-disclosure, while at the same time branding the Products as containing "Real Ingredients" and "Nothing Artificial," is deceptive and likely to mislead a reasonable consumer. Defendant deceptively markets the Products as containing "Real Ingredients" and "Nothing Artificial" to induce consumers to purchase the Products.

48. A representation that a product contains "Real Ingredients" and "Nothing Artificial" is material to a reasonable consumer.

49. Defendant markets and advertises the Product as containing "Real Ingredients" and "Nothing Artificial" to increase sales of the Product and Defendant is well-aware that those claims are material to consumers. Despite knowing that not all of the ingredients are "Real Ingredients" and "Nothing Artificial," Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as containing "Real Ingredients" and "Nothing Artificial."

50. Defendant engaged in misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products. As stated herein, such

representations and the widespread marketing campaign portraying the Products as containing "Real Ingredients" and "Nothing Artificial" is misleading and likely to mislead reasonable consumers because the Products do not contain only "Real" and no "Artificial" ingredients due to being made with unnatural ingredients.

51.     Reasonable consumers frequently rely on food label representations and information in making purchase decisions.

52.     Plaintiffs and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions. Defendant's misleading affirmative statements about the "Real Ingredients" and "Nothing Artificial" status of its Products obscured the material fact that Defendant failed to disclose about the unnaturalness of its Products.

53.     Plaintiffs and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions.

54.     Defendant made the deceptive representations and omissions on the Product with the intent to induce Plaintiff and the other Class members' purchase of the Product.

55.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

56.     Thus, Plaintiff and the other Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

57.     The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

58.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Class members.

59.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for "Real Ingredients" and "Nothing Artificial" labeled products over comparable products that are not labeled as containing "Real Ingredients" and "Nothing Artificial" furthering Defendant's private interest of increasing

sales for its Products and decreasing the sales of products that are truthfully offered as containing "Real Ingredients" and "Nothing Artificial" by Defendant's competitors, or those that do not claim to contain "Nothing Artificial."

60. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that they:

a) paid a sum of money for Products that were not as represented;

b) paid a premium price for Products that were not as represented;

c) were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

d) were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

e) did not receive Products that measured up to their expectations as created by Defendant;

f) ingested a substance that was other than what was represented by Defendant;

g) ingested a substance that Plaintiffs and the other members of the Class did not expect or consent to;

h) ingested a product that was artificial, synthetic, or otherwise unnatural;

i) ingested a substance that was of a lower quality than what Defendant promised;

j) were denied the benefit of knowing what they ingested;

k) were denied the benefit of truthful food labels;

l) were forced unwittingly to support an industry that contributes to environmental, ecological, and/or health damage;

m) were denied the benefit of supporting an industry that sells natural foods and contributes to environmental sustainability; and

n) were denied the benefit of the beneficial properties of the natural foods promised.

61. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and other Class members would not have been economically injured.

62. Among other things, the Plaintiff and other Class members would not have been denied the benefit of the bargain, they would not have ingested a substance that they did not expect or consent to.

63. Plaintiff and other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and other Class members purchased, purchased more of, or paid more for, the Products than they would have done, had they known the truth about the Products' containing artificial, synthetic and/or genetically modified ingredients.

64. Accordingly, Plaintiff and other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

C. **Plaintiff's Purchase and Reliance on the "Real Ingredients" and "Nothing Artificial" Statement Requires.**

65. Plaintiff, Gail Clardy, purchased the Products during the Class Period, including a purchase of the Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix, from a Safeway Supermarket, located in Oakland, California, during 2016.

66. Plaintiff, Jennifer Rose, purchased the Products during the Class Period, including a purchase of Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix, from a Sam's Club Warehouse's located in Vero Beach, Palm Beach County, Florida, during 2015.

67. Plaintiffs interpreted the "Real Ingredients" and "Nothing Artificial claim to mean that the Products did not contain unnatural, synthetic, artificial, or genetically modified ingredients.

68. Subsequent to purchasing the Products, Plaintiffs discovered that the falsity of the "Real Ingredients" and "Nothing Artificial" claim because of the presence of unnatural, synthetic, artificial, and/or genetically modified ingredients.

69. Through a variety of advertising, including the front packaging of the Products, PINNACLE has made untrue and misleading material statements and representations regarding the Products, which have been relied upon by Plaintiffs and members of the Class.

70. Plaintiffs and members of the Class would not have purchased the Products had they known that they did in fact contain artificial ingredients. Likewise, if Plaintiffs and members of the Class had known that the "Real Ingredients" and "Nothing Artificial" statement did not apply to all ingredients contained in the Products, they would not have purchased them.

71. Defendant's "Real Ingredients" and "Nothing Artificial" statements related to the Products are material to a consumer's purchase decision because reasonable consumers, such as Plaintiffs and members of the Class, care whether products contain unnatural, synthetic, and/or artificial ingredients, and thus attach importance to a "Real Ingredients" and "Nothing Artificial" claim when making a purchasing decision.

72. Plaintiffs and the proposed Class, all reasonable consumers, do not expect the Products that claims to contain "Real Ingredients" and "Nothing Artificial" to contain non-natural, highly processed ingredients, and genetically modified ingredients, nor did they expect the Product to be unlawfully misbranded.

73. Plaintiffs would not have purchased the Products if they had known the "Real Ingredients" and "Nothing Artificial" claim was false. Plaintiffs would purchase the Products again if they were not misbranded. However, if Plaintiffs and the Class purchase the Products again in its presently labeled condition, they will reencounter and repurchase a product that is not what it is represented to be. Thus, Defendant's deceptive and unfair conduct has deterred Plaintiffs from purchasing the mislabeled Products in the future.

74. Plaintiffs and the proposed Class face a real and immediate threat of future harm in the form of deceptively labeled, packaged and marketed Products sold at inflated prices based upon the deception that the Products contains "Real Ingredients" and "Nothing Artificial," when it does in fact contain artificial ingredients, and ingredients not considered "real" in the context of food labeling. Absent an injunctive order, Plaintiffs and the Class cannot rely on Defendant's

Products to be truthful and non-misleading, and the Products will continue to be sold at an artificially inflated price beyond its true market value.

75.     Defendant's ongoing wrongful conduct and practices, if not enjoined, will subject Plaintiffs, Class member and other members of the public to substantial continuing harm and will cause irreparable injury to the public.  Absent the injunctive power of this Court, Defendant will be permitted to continue to deceive and mislead members of the Classes and consuming public at large.

### D. **Plaintiffs Have Suffered Economic Damages**

76.     As a result of purchasing the Products that claim to contain "Real Ingredients" and "Nothing Artificial," but contain unnatural, synthetic and/or artificial ingredients, Plaintiffs and members of the Class have suffered economic damages.

77.     Defendant's "Real Ingredients" and "Nothing Artificial" advertising for the Products was and is false, deceptive, and/or likely to mislead reasonable consumers. Therefore, the Product is misbranded and valueless, worth less than what Plaintiffs and members of the Class paid for them, and/or are not what Plaintiffs and members of the Class reasonably intended to receive.

78.     Because the Products are unlawfully misbranded, and there is no market value for an unlawful product, Plaintiffs and the Class seek damages equal to the aggregate purchase price paid for the Products sold during the Class Period and injunctive relief.

79.     Moreover, and in the alternative, Plaintiffs and members of the Class paid a price premium for the so-called "Real Ingredients" and "Nothing Artificial" Product, over other similar products that do not claim to contain these statements. As a result, Plaintiffs and the Class are entitled to damages in the amount of the difference between the premium purchase price charged for the Products and the true market value of the Product and/or other comparable products without the false "Real Ingredients" and "Nothing Artificial" representations.

### V. **CLASS ACTION ALLEGATIONS**

80.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

81.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff bring this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as Statewide Classes and additionally and/or alternatively, Nationwide Classes as follows:

a.  **Nationwide Class**.  Plaintiffs brings this action on behalf of themselves and on behalf of statewide classes, as follows:

    i.  **Nationwide Classes.**

        1.  Pursuant to Rule 23(a) and (b)(2), all United States residents who purchased the Product, for personal use and not resale, during the four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class;

        2.  Pursuant to Rule 23(a) and (b) (3) all United States residents who purchased the Product, for personal use and not resale, during the four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class.

b.  **Statewide Classes.**  Plaintiffs brings this action on behalf of themselves and on behalf of statewide classes, as follows:

    i.  **California Classes.**

        1.  Pursuant to Rule 23(a) and (b)(2), all California residents who purchased the Products, for personal use and not resale, during the four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class;

        2.  Pursuant to Rule 23(a) and (b) (3), all California residents who purchased the Product, for personal use and not resale, during the four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class.

    ii.  **Florida Classes.**

        1.  Pursuant to Rule 23(a) and (b)(2), all Florida residents who purchased the Product, for personal use and not resale, during the

four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class;

2. Pursuant to Rule 23(a) and (b) (3), all Florida residents who purchased the Product, for personal use and not resale, during the four-year period preceding to the date of the filing of this Complaint, through and to the date Notice is provided to the Class.

82.     Plaintiffs respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified, including a reservation of the right to seek to certify subclasses, if discovery reveals that modifying the class definitions and/or seeking additional subclasses would be appropriate, including subclasses by state and/or purchase location. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff

83.     Defendant's representations, practices and/or omissions were applied uniformly to all members of all Classes, including any subclasses, so that the questions of law and fact are common to all members of the Class and any subclass.

84.     All members of the Classes and any subclasses were and are similarly affected by the deceptive advertising for the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Classes and any subclasses.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

85.     Based on the annual sales of the Product and the popularity of the Product, it is readily apparent that the number of consumers in both the Classes and any subclasses is so large as to make joinder impractical, if not impossible. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and (b) (3)**

86.      Questions of law and fact common to the Plaintiff Classes and any subclasses exist that predominate over questions affecting only individual members, including, *inter alia*:

    I.    Whether Defendant's business practices violated California's UCL, FAL, and CLRA;

    II.    Whether Defendant's business practices violated and Florida's FDUTPA;

    III.    Whether the Product contains "Nothing Artificial;"

    IV.    Whether the Product contains "Real Ingredients;"

    V.    Whether the ingredients contained in the Product are Artificial;

    VI.    Whether the ingredients contained in the Product are unnatural;

    VII.    Whether the ingredients contained in the Product are synthetic;

    VIII.    Whether the ingredients contained in the Product are artificial;

    IX.    Whether the ingredients contained in the Product are genetically modified;

    X.    Whether the claims "Real Ingredients" and "Nothing Artificial" on the Product's packaging is material to a reasonable consumer;

    XI.    Whether the claims "Real Ingredient" "Nothing Artificial" on the Product's packaging and advertising is likely to deceive a reasonable consumer, in light of the ingredients contained in the Product;

    XII.    Whether the claim "Nothing Artificial" on the Product's packaging and advertising is misleading to a reasonable consumer;

    XIII.    Whether a reasonable consumer is likely to be deceived by a claim that products contain "Nothing Artificial" when the products contain unnatural, synthetic, artificial, and/or genetically modified ingredients;

    XIV.    Whether Defendant was unjustly enriched by the sale of the Product; and

    XV.    Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

**Typicality—Federal Rule of Civil Procedure 23(a) (3)**

87.     The claims asserted by Plaintiffs in this action are typical of the claims of the members of the Plaintiff Classes and any subclasses, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Classes and any subclasses is common to the members of each. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a) (4)**

88.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiff Classes and any subclasses.

89.     Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation. The Class interests will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b) (2)**

90.     Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the final injunctive relief and declaratory relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Superiority—Federal Rule of Civil Procedure 23(b) (3)**

91.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

92.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any

difficulties that might be argued with regard to the management of this class action. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

93. Certification of this class action is appropriate under Rule 23, *Federal Rule of Civil Procedure*, because the questions of law or fact common to the respective members of the Classes and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

## VI. FIRST CAUSE OF ACTION:

## <u>COUNT I</u>

## <u>Violation of Consumer Legal Remedies Act—Cal. Civ. Code §§ 1750, *et seq.*</u>

### *(Brought on behalf of Plaintiff Gail Clardy and the Putative Class Against Defendant)*

94. Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

95. This cause of action is brought on behalf of California purchasers of the Products during the Class Period, pursuant to the CLRA, Cal. Civ. Code §§ 1750 *et seq.*, which prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

96. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

> a) In violation of Civil Code §1770(a)(5), Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have;
>
> b) In violation of Civil Code §1770(a)(7), Defendant represented that the Products are of a particular standard, quality, or grade, which they are not;

c) In violation of Civil Code §1770(a)(9), Defendant advertised the Products with an intent not to sell the Products as advertised; and

d) In violation of Civil Code §1770(a)(16), Defendant represented that the subject of the sale of the Products has been supplied in accordance with a previous representation when it has not.

97. Specifically, Defendant represented that its Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain synthetic, artificial, and/or genetically modified ingredients.

98. Consequently, Plaintiff and members of the Putative Class have suffered irreparable harm and are entitled to actual damages and restitution. Plaintiff also seeks equitable relief in the form of an order for injunctive relief:

a) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described above;

b) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described above;

c) Enjoining Defendant from engaging, using, or employing its advertising and marketing tactics to sell the Products, as described above; and

d) Enjoining Defendant from re-labeling the Products that claim to contain "Real Ingredients" and "Nothing Artificial," so long as they contain artificial, synthetic, and/or genetically modified ingredients.

99. As a further result, Plaintiff and members of the Putative Class have suffered damages, and because Defendant' conduct was deliberate, immoral, oppressive, made with malice and/or contrary to public policy, they are entitled to punitive or exemplary damages.

100. Plaintiff and all members of the Putative Class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d). Further, Plaintiff is an individual who purchased the Products for personal use.

101. The purchases of the Products by Plaintiff and California purchasers of the Products were and are "transactions" within the meaning of Civil Code §1761(e).

102.     Defendant sold the Products, which are "goods" within the meaning of California Civil Code § 1761(a), to Plaintiff and other members of the Putative Class during the Class Period.

103.     Defendant knew or should have known about the Products' misrepresentations.

104.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant are still representing that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain artificial, synthetic, and/or genetically modified ingredients. Such representations are false and misleading, and have injured Plaintiff and the Putative Class.

105.     Pursuant to the CLRA, Plaintiff separately seeks, and is entitled to, costs, attorney's fees, and any other applicable relief allowable under the CLRA.

## COUNT II

### Violation of False Advertising Law—Cal. Bus. & Prof. Code §§ 17500, *et seq.*

### (*Brought on Behalf of Plaintiff Gail Clardy and the Putative Class Against Defendant*)

106.     Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

107.     Throughout the Class Period Defendant engaged in a public advertising and marketing campaign representing that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain artificial, synthetic, and/or genetically modified ingredients.

108.     Defendant's advertisements and marketing representations are misleading, untrue, and likely to deceive reasonable consumers.

109.     Defendant engaged in its advertising and marketing campaign with the intent to directly induce customers to purchase the Products based on false claims that the Products contain "Real Ingredients" and "Nothing Artificial."

110.     In violation of California Bus. & Prof. Code §§ 17500, *et seq.*, Defendant disseminated, or caused to be disseminated, the deceptive Products' labeling and advertising representations.

111.    Defendant's labeling and advertising representations for the Products are by their very nature unfair, deceptive, and/or unlawful within the meaning of California Bus. & Prof. Code §§ 17500 *et seq.*

112.    The representations were at all material times hereto likely to deceive reasonable consumers, including Plaintiff and members of the Putative Class.

113.    Defendant violated California Bus. & Prof. Code §§ 17500 *et seq.*, in making and disseminating the deceptive representations alleged herein.

114.    Defendant knew or should have known that the representations were false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Putative Class.

115.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and similarly situated California purchasers of the Products have suffered economic damages.

116.    Plaintiff was injured in fact and lost money as a result of Defendant's conduct of improperly advertising the Products as described herein.

117.    Plaintiff would not have purchased the Products but for Defendant's misleading statements about the Products.

118.    Pursuant to Bus. & Prof. Code § 17535, Plaintiff, individually and on behalf of all similarly situated California purchasers, seeks an order of this Court requiring Defendant to restore to purchasers of the Products all monies that may have been acquired by Defendant as a result of such false, unfair, deceptive, and/or unlawful acts or practices. Plaintiff and members of the Putative Class seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief enjoining Defendant from disseminating its untrue and misleading statements, and other relief allowable under California Business & Professions Code Section 17535.

119.    Furthermore, as a result of Defendant's violations of the FAL, Plaintiff and similarly situated California purchasers of the Products are entitled to restitution for out-of-pocket expenses and economic harm.

120. Pursuant to Civil Code § 3287(a), Plaintiff and similarly situated California purchasers of the Products are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and similarly situated California purchasers of the Products are entitled to interest in an amount according to proof.

### COUNT III

**Violation of UCL: Fraudulent Prong—Cal. Bus. & Prof. Code §§ 17200, _et seq._**

**(_Brought on Behalf of Plaintiff Gail Clardy and the Putative Class Against Defendant_)**

121. Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

122. Cal. Bus. & Prof. Code § 17200 prohibits any "fraudulent…business act or practice." To prove a cause of action under the "fraudulent" prong of the UCL, the plaintiff need only show that Plaintiff and members of the Putative Class are "likely to be 'deceived'" by the conduct.[4] Notably, a UCL violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any injury.

123. Thus, Defendant's acts and practices are fraudulent in that they have deceived and/or are likely to deceive, Plaintiff and members of the Putative Class. Specifically, Defendant's business practices as alleged herein are fraudulent because they are likely to deceive Plaintiff and members of the Putative Class into believing the Products have characteristics, uses, and benefits they do not have, including that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain synthetic, artificial, and/or genetically modified ingredients.

124. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein.

125. Defendant's deceptive and fraudulent business acts and practices were the direct and proximate cause of Plaintiff's and members of the Putative Class's injuries. Plaintiff and

---

[4] _See In re Tobacco II Cases_, 46 Cal. 4th 298, 312 (2009); _Stearns v. TicketMaster Corp._, 655 F.3d 1013, 1020 (9th Cir. 2011).

members of the Putative Class relied on Defendant's deceptive and fraudulent business acts and practices to their detriment in that but for Defendant's misrepresentation that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain synthetic, artificial, and/or genetically modified ingredients. Plaintiff and members of the Putative Class would have paid less for the Products, would not have purchased the Products, and/or the Products are worth less because of the aforementioned misrepresentations. Moreover, Plaintiff and members of the Putative Class were denied the benefit of the bargain when they decided to purchase the Products over competitor products that are less expensive and/or do not claim to contain "Real Ingredients" and "Nothing Artificial."

126. Finally, upon information and belief, Defendant is aware that the claims it made about the Products are false, misleading, and likely to deceive reasonable consumers.

127. Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, individually, and on behalf of the Putative Class, seeks an order of this Court for injunctive relief and disgorging and restoring all monies that have been acquired by Defendant as a result of Defendant's business acts or practices described herein. Plaintiff, the Putative Class, and the general public may be irreparably harmed or denied an effective and complete remedy in the absence of such an order.

128. As a result of Defendant's violations of the UCL, Plaintiff and the Putative Class are entitled to restitution for out-of-pocket expenses and economic harm.

129. Pursuant to Civil Code § 3287(a), Plaintiff and the Putative Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Putative Class are entitled to interest in an amount according to proof.

## COUNT IV

### Violation of the UCL: Unfair Prong—Cal. Bus. & Prof. Code §§ 17200, *et seq.*

(*Brought on Behalf of Plaintiff Gail Clardy and the Putative Class Against Defendant*)

130.    Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

131.    Cal. Bus. & Prof. Code § 17200 prohibits any "unfair…business act or practice." Defendant's business practices, as alleged herein, are "unfair" within the meaning of the UCL because: (1) Defendant's conduct caused, or is likely to cause, substantial injury to Plaintiff and the members of the Putative Class; (2) such injury is not reasonably avoidable by Plaintiff and members of the Putative Class due to Defendant's exclusive knowledge of the exact character and content of the Products' efficacy; and (3) the injury is not outweighed by any countervailing benefits to competition or Plaintiff and members of the Putative Class.

132.    Further, Defendant committed "unfair" business acts or practices by engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and members of the Putative Class; and engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged herein.[5]

133.    Plaintiff and members of the Putative Class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they decided to purchase the Products over competitor products that are less expensive and/or do not claim to contain "Real Ingredients" and "Nothing Artificial."

134.    First, the injury to Plaintiff and members of the Putative Class is substantial because but for Defendant's misrepresentations that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, the Products contain synthetic, artificial, and/or genetically modified ingredients, Plaintiff and members of the Putative Class would have paid less for the Products, would not have purchased the Products, and/or the Products are worth less because they do not contain "Real Ingredients" and "Nothing Artificial." Moreover, Plaintiff and members of the Putative Class were denied the benefit of the bargain when they decided to purchase the Products over competitor products that are less expensive and/or do not claims to contain "Real Ingredients" and "Nothing Artificial."

---

[5]    *See People v. Casa Blanca Convalescent Home, Inc.*, 159 Cal. App. 3d 509, 530 (1984).

135.    Second, given the fact that Defendant had exclusive knowledge of the exact character and content of the Products' efficacy and Plaintiff and members of the Putative Class had no reason to believe that the Products do not contain "Real Ingredients" and "Nothing Artificial," the resulting injury is not of the variety that Plaintiff and members of the Putative Class could reasonably have avoided.

136.    Third, the injury to Plaintiff and members of the Putative Class is not outweighed by any countervailing benefits to competition or Plaintiff and members of the Putative Class. Any purported benefits to Plaintiff and members of the Putative Class, if any, are negated by the deceptive advertising.

137.    Finally, Defendant had an improper motive (profit before accurate marketing) in its practices related to the deceptive labeling and advertising of the Products, as set forth above, which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff and members of the Putative Class. Defendant' conduct also offends established public policies against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.

138.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.

139.    As purchasers and consumers of Defendant's Products, and as members of the general public who purchased and used the Products, Plaintiff and the Putative Class are entitled to bring this class action seeking all available remedies under the UCL.

140.    Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, individually, and on behalf of the Putative Class, seeks an order of this Court for injunctive relief and disgorging and restoring all monies that have been acquired by Defendant as a result of Defendant's business acts or practices described herein. Plaintiff, members of the Putative Class, and the general public may be irreparably harmed or denied an effective and complete remedy in the absence of such an order.

141.    As a result of Defendant's violations of the UCL, Plaintiff and the Putative Class are entitled to restitution for out-of-pocket expenses and economic harm.

142.   Pursuant to Civil Code § 3287(a), Plaintiff and the Putative Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Putative Class are entitled to interest in an amount according to proof.

### **COUNT V**

### **Violation of the UCL: Unlawful Prong—Cal. Bus. & Prof. Code §§ 17200, *et seq.***

### (***Brought on Behalf of Plaintiff Gail Clardy and the Putative Class Against Defendant***)

143.   Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

144.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful…business act or practice." A business practice is "unlawful" under the UCL if it violates any other law or regulation. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute "unlawful" business acts and practices because Defendant's conduct violates the FAL and the CLRA.

145.   Defendant's conduct is also "unlawful" in that it violates § 43(a) the Lanham Act, 15 U.S.C. § 1125(a) by introducing false statements of fact into interstate commerce about its Products that were material in that they were likely to influence consumers' purchasing decisions, and that had a tendency to deceive, or actually deceived a substantial portion of Defendant's audience, resulting in injury.

146.   Defendant's conduct is further "unlawful" in that it violates the FDCA and its implementing regulations as follows:

  a.   21 U.S.C. § 331(a) (prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device tobacco product, or cosmetic that is … misbranded");

  b.   21 U.S.C. § 331(b) (prohibiting the "misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce");

c. 21 U.S.C. § 331(c) (prohibiting the "receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is … misbranded, and the delivery or proffered delivery thereof for pay or otherwise"); and

d. 21 U.S.C. § 362(a) (which deems any cosmetic misbranded when the label contains a statement that is "false or misleading in any particular");

147. Defendant's conduct is further "unlawful" by violating the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), *see* Cal. Health & Safety Code §§ 111730-111790, which incorporates the provisions of the FDCA. Specifically, but not limited to, the following provisions:

e. § 111730 ("Any cosmetic is misbranded if its labeling is false or misleading in any particular.");

f. § 110680 ("Any cosmetic is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");

g. § 110765 ("It is unlawful for any person to manufacture, or sell any cosmetic that is misbranded.");

h. § 111770 ("It is unlawful for any person to misbrand any cosmetic."); and

i. § 111775 ("It is unlawful for any person to receive in commerce any cosmetic that is misbranded, or to deliver or proffer for delivery any cosmetic.").

148. As detailed above, Defendant's misrepresentations constitute violations of the FDCA and the Sherman Law, and, as such, violate the UCL's "unlawful" prong.

149. Defendant's unlawful practices include disseminating false and/or misleading representations about the Products.

150. Specifically, Defendant has represented that its Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain artificial, synthetic, and/or genetically modified ingredients.

151. Defendant used these deceptive misrepresentations to induce Plaintiff and members of the Putative Class to purchase products that were of lesser value and quality than advertised.

152.     As a result of Defendant's misleading advertising, Plaintiff suffered injury in fact and lost money or property. Plaintiff was denied the benefit of the bargain when she decided to purchase Defendant's Products over other comparable products that are less expensive and/or do not claim to contain "Real Ingredients" and "Nothing Artificial."

153.     Thus, Plaintiff and members of the Putative Class relied on Defendant's unlawful business acts and practices to their detriment in that but for Defendant's misrepresentations that the Products contain "Real Ingredients" and "Nothing Artificial," when in fact, they contain artificial, synthetic, and/or genetically modified ingredients, Plaintiff and members of the Putative Class would have paid less for the Products, would not have purchased the Products, and/or the Products are worth less because of the aforementioned misrepresentations. Further, had Defendant not advertised the Products in a fraudulent manner, Plaintiff would have paid less for the Products.

154.     Because Defendant's business conduct in advertising, marketing, and selling the Products using false and misleading statements, in violation of the CLRA, FAL, and/or other federal and state laws or regulations alleged herein, it constitutes a per se violation of the "unlawful" prong of the UCL.

155.     As purchasers and consumers of Defendant's Products, and as members of the general public who purchased and used the Products, Plaintiff and the Putative Class are entitled to and bring this class action seeking all available remedies under the UCL.

156.     Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, individually and on behalf of the Putative Class, seeks an order of this Court for injunctive relief and disgorging and restoring all monies that may have been acquired by Defendant as a result of such unlawful business acts or practices. Plaintiff, the Putative Class, and the general public may be irreparably harmed and/or denied an effective and complete remedy in the absence of such an order.

157.     As a result of Defendant's violations of the UCL, Plaintiff and the Putative Class are entitled to restitution for out-of-pocket expenses and economic harm.

158.     Pursuant to Civil Code § 3287(a), Plaintiff and the Putative Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unlawful business

conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Putative Class are entitled to interest in an amount according to proof.

<u>COUNT VI</u>

***VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,***

***FLA. STAT. §§ 501.201, ET SEQ.***

(***Brought on Behalf of Plaintiff Jennifer Rose and the Putative Class Against Defendant***)

159.    Plaintiffs re-allege and fully incorporates by reference all allegations set forth in the preceding paragraphs (1) through ninety-three (93) of this Complaint as if fully set forth herein verbatim.

160.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

161.    The sale of the Product at issue in this cause was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

162.    Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*. Defendant's Products are a "good" within the meaning of the Act.  Defendant is engaged in trade or commerce within the meaning of the Act.

163.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

164.    Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) (1) of the Trade Commission Act."  Defendant's unfair and deceptive practices are likely to mislead

– and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

165.    Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented that its Products contain "Real Ingredients" and "Nothing Artificial," when in fact the Products contain unnatural, synthetic, and/or artificial ingredients.

166.    Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in that they purchased and consumed Defendant's Products.

167.    Reasonable consumers rely on Defendant to honestly represent the true nature of their ingredients.

168.    As described in detail above, Defendant has represented that its products contain "Real Ingredients" and "Nothing Artificial," when in reality they contain unnatural, synthetic, and/or artificial ingredients.

169.    Defendant has deceived reasonable consumers, like Plaintiff and the Class, into believing its Products were something they were not.

170.    The knowledge required to discern the true nature of Defendant's Products is beyond that of the reasonable consumer—namely that the Product contains unnatural, synthetic, and/or artificial ingredients. Defendant's "Real Ingredients" and "Nothing Artificial" statement leads reasonable consumers to believe that all of the ingredients in the Product are natural, when they are not.

171.    Federal and State Courts decide omission and misrepresentation matters regularly, including those involving a reasonable consumer's understanding of the meaning of words on food labels. Accordingly, the issue of whether the "Real Ingredients" and "Nothing Artificial" label is misleading to a reasonable consumer is well within the jurisdiction and purview of the Court.

172.    The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as described above.

173.    Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendant, and for restitution and disgorgement.

174.    Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make seek an award for damages, attorney's fees and costs as allowable under FDUTPA.

## VII. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, individually, and on behalf of all others similarly situated, pray for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.    For an award of declaratory and equitable relief as follows:

    (a)    Declaring Defendant's conduct to be in violation of the UCL, FAL, CLRA, and FDUTPA as alleged herein, and enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing and advertising of the Products for the purpose of selling the Products in such manner as set forth in detail above;

    (b)    Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

    (c)    Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

    (d)    Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.    For actual damages in an amount to be determined at trial for all causes of action;

4.    For an award of attorney's fees and costs;

5.    For any other relief the Court might deem just, appropriate, or proper; and

6.    For pre- and post-judgment interest on any amounts awarded.

# VIII. DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a jury trial on all issues so triable.

**DATED:** **August 3, 2016**           **Respectfully Submitted**,

*/s/  Benjamin M. Lopatin*
Benjamin M. Lopatin, Esq. (SBN: 281730)
*blopatin@ELPlawyers.com*
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
2201 Market St., Suite H
San Francisco, CA 94114
Tel.: (415) 324-8620
Fax: (415) 520-2262

*Attorneys for Plaintiffs Gail Clardy,*
*Jennifer Rose and the Proposed Class*